UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STEVEN LOCURTO

              Petitioner,

     - against -

UNITED STATES OF AMERICA,

              Respondent.
--------------------------------------------------------X

<u>MEMORANDUM & ORDER</u>
05-CV-1327 (NGG)

GARAUFIS, United States District Judge.

       Petitioner Steven LoCurto has moved pursuant to 28 U.S.C. § 2255 for a writ of habeas

corpus vacating his December 16, 2002 guilty plea for conspiracy to distribute marijuana (21

U.S.C. §§ 846 and 841(b)(1)(C)).  LoCurto entered a guilty plea pursuant to an agreement with

the government.  LoCurto now asserts a Sixth Amendment ineffective assistance of counsel

claim.  LoCurto argues that there was an actual and unwaivable conflict of his defense counsel,

Larry Bronson, Esq., that led to a lapse in his representation in that Bronson failed to correct

LoCurto's impression that he would not be prosecuted in the future in exchange for his guilty

plea.  (Pet.¶ 12(C).)  Additionally, LoCurto contends that his guilty plea was not made

"knowingly and voluntarily," but rather that he was coerced into accepting it because he was told

by Bronson and the Assistant U.S. Attorney that in exchange for the guilty plea he "would not

[be charged] . . . with any more crimes."  (<u>Id.</u> ¶ 12(B).)  Finally, LoCurto asserts that he did not

understand that the guilty plea could be used as a predicate act in a later prosecution of a

racketeering conspiracy charge.  (<u>Id.</u> ¶ 12(A).)  As LoCurto is now a defendant in <u>United States</u>

<u>v. Urso</u>, 03-CR-1382 (NGG), facing a racketeering charge alleging the instant marijuana

1

distribution conspiracy as a predicate act in a racketeering conspiracy, LoCurto in this petition seeks not only to collaterally attack his conviction in the instant matter, but also the use of this conviction as a predicate act in the <u>Urso</u> racketeering charge against him. (Oppenheim Ltr., dated July 20, 2005, at 3.)

LoCurto's application for habeas relief on the basis of ineffective assistance of counsel fails because Bronson had no actual conflict during his period of representation, LoCurto knowingly and voluntarily waived any potential conflict that Bronson might have had in his representation of him, and the plea agreement was not the result of ineffective assistance of counsel. LoCurto's other bases are procedurally defaulted and are squarely foreclosed by the plea agreement and his plea testimony. Accordingly, LoCurto's petition is dismissed.

## I.     Background

### A.     Factual Background

LoCurto was arrested in March 2002 and charged with "conspiring to distribute marijuana in violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(B)(vii) and 846." (Gov't's Ltr. Br. Opp. Petition, dated July 2, 2005, at 1.) In <u>United States v. LoCurto</u>, 02-CR-307 (NGG), LoCurto was represented by Larry Bronson, Esq. (Oppenheim Ltr., dated July 20, 2005, at 3.) Bronson, joined by Barry Weinstein on December 10, 2002, represented LoCurto from LoCurto's arrest through his guilty plea in December 2002, and is a signatory to LoCurto's December 16, 2002 plea agreement. (Plea Agreement, attached as Ex. A to Gov't Br. ("Plea Agreement"), at 5; <u>see</u> <u>also</u> Transcript, attached as Ex. C to Gov't Br.)

Bronson also represented LoCurto's co-defendant Frank Coppa, who was arrested on October 2, 2002. At the arraignment of Coppa before Magistrate Judge Cheryl Pollak, Bronson

acknowledged the potential conflict in representing Coppa and LoCurto, and stated that "I intend

to represent Mr. Coppa and Mr. Locurto will either get other counsel or probably is going to

plead guilty from negotiations we've been having."  (Coppa Arraignment, attached as Exhibit A

in Oppenheim Ltr., dated July 20, 2005, at 7.)  In November 2002, Coppa "retained separate

counsel to pursue cooperation with the government."  (Gov't Ltr., dated September 21, 2005, at

2.)  Attorneys Ralph Cafaro and Richard Mays signed Coppa's proffer agreement on November

5, 2002; Bronson did not sign this or any agreement related to Coppa's plea and did not appear

on behalf of Coppa during Coppa's Plea Hearing.  (Id. at 2-3; see also Proffer Agreement,

attached as Ex. A to Gov't Ltr.; Transcript of Plea, dated Dec. 12, 2002 ("Coppa Plea Hearing"),

attached as Ex. B to Gov't Ltr.)  However, Bronson had understood that he still represented

Coppa at least until LoCurto's plea allocutions on December 16, 2002.  (Transcript of Plea

Hearing, dated Dec. 16, 2002 ("LoCurto Plea Hearing"), at 3, attached as Ex. C to Gov't Ltr. Br.)

     In light of Bronson's representation of LoCurto and Coppa, on October 24, 2002 I

appointed Harry Batchelder, Esq. as counsel to LoCurto to advise him of potential conflicts that

Bronson might have in his representation of LoCurto ("Curcio counsel").  Assistant United States

Attorney Greg Andres wrote to Batchelder on November 15, 2002, explaining the potential

conflict.  Before taking LoCurto's guilty plea, I conducted a hearing to determine whether

LoCurto waived potential conflicts in Bronson's representation of him and Coppa:

> The Court:    Mr. Locurto, you've had an opportunity to speak with Mr.
>     Batchelder regarding any potential conflict of interest that may
>     arise as the result of Mr. Bronson representing you and Mr.
>     Co[p]pa; is that right?
>
> [LoCurto]:    I have.  I spoke to him on the phone.

| The Court: | Did Mr. Batchelder discuss with you what the possible consequences of such a conflict would be, if indeed that conflict did occur? |
|---|---|
| [LoCurto]: | Yes, your Honor. |
| The Court: | Have you considered whether or not you wish to continue with Mr. Bronson, with the knowledge that there may be at some point in the future a conflict which may arise between Mr. Bronson's representation of you and his representation of Mr. Co[p]pa? |
| [LoCurto]: | Yes, your Honor. |
| The Court: | At this time do you wish to go forward with Mr. Bronson's representation of you or do you wish to have another attorney represent you? |
| [LoCurto]: | Mr. Bronson is fine. Thank you. |
| The Court: | You're aware of the potential conflict, which is not an actual conflict, but you would like Mr. Bronson to continue to represent you at this time. |
| [LoCurto]: | Yes, but I understand it's a waivable conflict anyway. |
| The Court: | It's waivable in that it's a potential conflict and if there were an actual conflict, we'd have to examine what kind of conflict it was and whether or not it would be appropriate for Mr. Bronson to continue to represent one or the other of you, but we haven't crossed that bridge. We'll cross that bridge when we come to it. Do you understand that? |
| [LoCurto]: | Yes, your Honor. |
| Mr. Andres: | Judge, just to be clear, neither Frank Co[p]pa Senior nor Stephen LoCurto are charged in the same counts. Mr. Locurto isn't charged in the RICO count and Mr. Frank Cop[p]a Senior is. The substantive counts that Mr. Frank Cop[p]a Senior is charged in, Mr. Locurto isn't a defendant. |
| The Court: | I understand. |
| Mr. Bronson: | Just for the record, your Honor, I anticipate being substituted as |

attorney of record for Mr. Cop[p]a.  It has not taken place yet.

(LoCurto Plea Hearing, at 4-5.)  Satisfied that LoCurto had waived any potential conflicts that

Bronson may have had in his representation of him, I proceeded to take LoCurto's guilty plea.

(Id. at 24-28.)  The plea was based on an agreement that LoCurto signed with the govenment, in

which LoCurto pled to a lesser charge of marijuana distribution in return for the government's

voluntary dismissal of greater included offenses.  (See Plea Agreement, attached as Ex. A to

Gov't Br.)  In Paragraph 4 of this agreement, LoCurto  stipulated that he would not "file an

appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a

term of imprisonment of 37 months or below."  (Id.)  I referred to this paragraph in taking

LoCurto's plea, and asked:

> The Court: Do you understand that you have the right to appeal only if I sentence you to more than 37 months?
>
> [LoCurto:] Yes.
>
> The Court: Do you understand that even if the sentence I give you is more severe than what you may be thinking or hoping you will receive, you are still going to be bound by your guilty plea and not permitted to challenge or appeal that sentence as long as it is 37 months or less, as we have discussed?
>
> [LoCurto:] Yes, your Honor.

(LoCurto Plea Hearing, at 20-21.)  On April 28, 2003, I sentenced LoCurto to a twenty-seven

month term of imprisonment, to be followed by a three-year period of supervised release.  (See

Judgment, attached as Ex. B to Gov't Br.)

At the end of LoCurto's Curcio hearing, I asked Bronson whether Coppa would

eventually be represented by someone else, and Bronson answered in the affirmative, but added,

"Nothing is ever certain." (LoCurto Plea Hearing, at 5.) Those words proved to have been prophetic for Bronson. On September 28, 2005, the government obtained an indictment, charging Bronson with having obstructed justice and having engaged in contempt of court in the furtherance of a racketeering conspiracy. United States v. Bronson, No. 05-CR-714, Indictment. The government in this ongoing prosecution alleges that Bronson obstructed justice in the investigation and prosecution of his co-defendant Steven Kaplan, and that he met with members of organized crime and identified for them members who he believed were cooperating with the government, including Coppa. United States v. Bronson, No. 05-CR-714, Gov't Letter Opp. Bail, dated October 7, 2005, at 5-9.

**B.      Procedural History**

LoCurto filed this Petition on March 9, 2005, in which he argued that a writ should issue because contrary to his understanding of the plea agreement, pursuant to which he believed that he would not be prosecuted again, he was subsequently charged with racketeering acts including marijuana distribution in Urso. He also requests the appointment of counsel. Attorney Laura Oppenheim, writing on behalf of LoCurto to support his application for appointment of counsel, argued that LoCurto's petition should be granted because of an actual conflict in Bronson's representation of LoCurto and Coppa. (See Oppenheim Ltr., dated July 20, 2005.) I denied this request on September 28, 2005. Petitioner wrote again to this court on December 6, 2005, seeking to amend his Petition alleging that his Sixth Amendment right to counsel was violated because of an actual conflict in Bronson's representation, in that Bronson represented himself and Coppa, a cooperating witness, and that Bronson was later indicted for criminal activity. (Pet.'s Ltr., dated Dec. 6, 2005, at 1.)

**II.     Discussion**

**A.     Sixth Amendment Right to Effective Assistance of Counsel**

To the extent that LoCurto's petition had not previously alleged a Sixth Amendment violation in Bronson's representation of him because of Bronson's representation of himself and Coppa, I grant Petitioner's request to amend his petition to include this claim, and shall proceed to examine the Sixth Amendment issue first.[1]

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998) (citations omitted). A petitioner may assert that he or she "has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994). A potential conflict in representation of two defendants occurs "if the interests of the defendants . . . diverge at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." Cuyler v. Sullivan, 446 U.S. 335, 336 n.3 (2d Cir. 1980).

A petitioner alleging that his or her counsel had a conflict must demonstrate that the conflict resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 692 (1984). "However,

_____

[1] LoCurto's Sixth Amendment claim is preserved for review in this petition because he was not required to bring this issue on direct appeal. Massaro v. United States, 538 U.S. 500, 508-09 (2003). I also find that the claim is not untimely, because it is brought within one year of Bronson's indictment, which is at the core of LoCurto's claim. See 28 U.S.C. § 2255.

7

prejudice is presumed when a defendant establishes that her attorney had an actual conflict of interest that adversely affected the attorney's performance." Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993).

When a district court learns of the possibility of a conflict of interest, the court must inquire as to the "facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153. If the court's inquiry results in the finding of a severe conflict, which the Second Circuit defines as "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," the court must disqualify that attorney. Id. (citing United States v. Fulton, 5 F.3d 605, 612-14 (2d Cir. 1993)). If, however, the court finds that there is only a potential conflict, the court should obtain a valid waiver from the defendant. Specifically, the court should "(i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel." United States v. Iorizzo, 786 F.2d 52, 59 (2d Cir. 1986) (citing United States v. Curcio, 680 F.2d 881 (2d Cir. 1982)).

Upon a review of the relevant material, I find that LoCurto's claim that Bronson's representation of himself and Coppa violated his Sixth Amendment rights lacks merit because there was no actual conflict that adversely affected Bronson's representation of LoCurto, and LoCurto knowingly and intelligently waived any potential conflict that Bronson might have had.

1.      Actual Conflict

Petitioner, in support of his claim that Bronson had an actual conflict in his representation

of himself and Coppa, urges that Bronson represented Coppa as a cooperating witness in the

same prosecution in which Petitioner provided a guilty plea.  "Had [LoCurto] kown that an actual

conflict existed, Mr. LoCurto would not have waived his right to a conflict-free attorney - if

indeed that conflict was waivable."  (Oppenheim Ltr., dated July 20, 2005, at 3.)  The

government counters that there was no actual conflict because "Bronson did not represent the

defendant Coppa during his cooperation and he was not involved in any aspect of Coppa's

cooperation."  (Gov't Ltr., dated Sept. 21, 2005, at 2.)

As I found in LoCurto's plea hearing, there was no actual conflict present at the time that

Bronson began his representation of LoCurto and Coppa.  Although LoCurto and Coppa were co-

defendants in the same indictment, they were charged with completely separate acts, and did not

have divergent interests in the prosecution.  (LoCurto Plea Hearing, at 5.)  Nevertheless, an

actual conflict can manifest during the course of multiple representation, *viz.*: if one defendant in

the course of a prosecution seeks a cooperation agreement with the government that necessarily

inculpates the other defendant.  The question, therefore, is whether an actual and unwaivable

conflict developed in Bronson's representation of Coppa and LoCurto.

Had Bronson represented Coppa as an informant at the same time that he acted as counsel

to LoCurto during his guilty plea, a conflict might have arisen as Coppa might have proffered

inculpatory statements regarding LoCurto.  However, Petitioner's contention that Bronson

represented Coppa in his cooperation with the government is not supported by the record.  While

Bronson's understanding may have been that he still represented Coppa up to when LoCurto pled

guilty in December 2002, the Coppa plea agreement and plea hearing show that Bronson did not represent Coppa in his dealings with the government. It appears that Coppa maintained Bronson as official counsel and retained two other attorneys, Cafaro and Mays, to represent him as "shadow" counsel in secret proffer sessions with the government in the beginning of November 2002. One can well imagine why Coppa, who had reason to prevent members of organized crime from learning that he was going to cooperate with the government, would maintain counsel that would continue "official" adversarial representation with the prosecution while in secret negotiations with the government.

Bronson's later indictment for alleged criminal activity did not create an actual conflict in his representation of LoCurto. "It is well-settled in this circuit that an actual conflict of interest exists when an attorney engaged in wrongful conduct *related* to the charge for which the client is on trial." United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993) (citing United States v. Jones, 900 F.2d 512 (2d Cir.), *cert. denied*, 498 U.S. 846 (1990)) (emphasis supplied). The attorney's conduct is related where it would prevent the attorney from providing unbiased advice to the client, or from engaging in a spirited defense of the defendant because doing so might directly implicate the defendant's attorney. Id. at 609-10. By contrast, there is no actual conflict created through alleged attorney misconduct if there is no evidence "'that the defense attorney [in his representation would have been] required to make a choice advancing his own interests to the detriment of his client's interests.'" Cerro v. United States, 872 F.2d 780, 785 (7th Cir. 1989) (quoting United States v. Horton, 845 F.2d 1414 (7th Cir. 1988)). As Bronson's indictment laid a foundation of truth for the government's allegations in Bronson, for the purposes of this petition, I deem those allegations to be true. See Fulton, 5 F.3d at 610.

In <u>United States v. Bronson</u>, No. 05-CR-714 (NGG), the government alleges that Bronson "engaged in a systematic pattern of witness tampering, bribery, and obstruction of justice during the investigation and prosecution of" his co-defendant Larry Kaplan, and that he obstructed justice and was in contempt of court when he allegedly utilized his law office to facilitate a meeting between two known members of organized crime, at which he identified organized crime members who he believed were cooperating witnesses, including Coppa. <u>United States v. Bronson</u>, No. 05-CR-714 (NGG), Gov't Ltr. Opp. Bail, dated Sept. 30, 2005, at 1. In the first charge, the government alleges that beginning in the 1990's, "Bronson and Kaplan, a Gambino family associate, engaged in repeated acts of witness intimidation and corrupt persuasion during the investigation and prosecution of crimes related to the *Gold Club*, a strip club owned and operated by Kaplan in Atlanta, Georgia." <u>Id.</u> (emphasis supplied). There is no nexus between this charge and the government allegations related to LoCurto's guilty plea. LoCurto was charged with and pled guilty to having distributed marijuana in the Eastern and Southern Districts of New York, and in <u>Urso</u> is alleged to have performed this act in the furtherance of the Bonanno crime family. The allegations that LoCurto pled guilty to and that are now a part of <u>Urso</u> and the <u>Bronson</u> obstruction of justice charge concern different people engaged in totally separate acts on behalf of different crime families. As a result, I find that there is no actual conflict in this charge because it is not even remotely related to LoCurto's allocutions.

The more relevant portion of the government's allegations against Bronson is that on May 15, 2003, he hosted a meeting with known members of the Bonanno crime family, in which he identified other Bonanno members who he believed were cooperating with the government,

including Coppa.  Id. at 6-9.  According to the government, Bronson in this meeting spoke with

"cooperating witness and Bonanno family captain James Tartaglione," and "Louis 'Louie Haha'

Attanasio, a member of the Bonanno family on supervised release" and LoCurto's co-defendant

in Urso.  Id. at 5.  Tartaglione allegedly recorded this conversation, which the government quoted

in its letter opposing Bronson's pre-trial release.  Although in the alleged conversation Bronson

does not discuss the means by which Bronson learned that Coppa had become a government

informant, he purportedly considered with Tartaglione and Attanasio the potential informants to

the "Sonny Black" homicide, and told them that "Frank Coppa gave them everything about that

murder."  Id. at 7.  "Sonny Black" is a street name for Dominick Napolitano, who was murdered

in 1981.  While several Urso defendants are charged with the murder of Napolitano, LoCurto is

not among them.  See United States v. Urso, 03-CR-1382 (NGG), Indictment.

      I find that this allegation against Bronson is not related to the charge to which LoCurto

pled guilty, and did not impact Bronson's ability to provide a conflict-free defense for LoCurto.

While the allegations involve the same crime family, the accusations are otherwise totally

unrelated.  The purported conversation did not mention LoCurto, did not imply that Bronson had

any information to share regarding LoCurto, did not articulate an interest divergent to LoCurto's,

and did not suggest that Bronson had any particular bias against LoCurto.  These allegations do

not raise the suggestions that Bronson had any material knowledge regarding the charges to

which LoCurto pled guilty, or that a spirited defense of LoCurto in a trial would have in any way

implicated Bronson.  There is also no basis to conclude from these allegations that Bronson had

any interest that deviated from LoCurto's benefit in advising LoCurto to obtain a plea agreement.

      Moreover, to the extent that Bronson's representation of Coppa as a cooperator might

have created an actual conflict in his representation of LoCurto, the substance of Bronson's indictment supports the conclusion that Bronson did not participate in Coppa's cooperation agreement with the government. This alleged conversation took place six months after his representation of both LoCurto and Coppa came to an end. There is no indication from the recorded conversation that Bronson knew of Coppa's cooperation as a result of his representation of Coppa after his arrest. If it were true that Bronson represented Coppa in negotiating a cooperation agreement with the government and that he informed organized crime members regarding potential informants, it would be fair to infer that Bronson would have disclosed Coppa's cooperation far earlier. Furthermore, assuming for the purposes of this petition that the government's allegations are true, Coppa was justified in withholding from Bronson his intention to become a cooperating witness. In conclusion, as the evidence strongly suggests that Coppa excluded Bronson from his communications with the government, I find that Petitioner has failed to show that Bronson had an actual conflict in his representation of Coppa and LoCurto.

Furthermore, I reject as unfounded Petitioner's contention that Bronson's dual representation caused a "lapse of representation" in that Bronson advised LoCurto that his plea agreement would provide him with "coverage" for the Platia homicide. (Oppenheim Ltr., dated July 20, 2005, at 1 n.1.) Petitioner offers no evidence in support of the claim that Bronson advised him that he would not be prosecuted for a homicide if he pled guilty to marijuana distribution. In light of the difference in severity between these two offenses, it is not plausible that such an offer would exist. Furthermore, the plea agreement and the relevant portion of the plea hearing in which LoCurto stated his understanding of the plea agreement makes no mention of the Platia homicide. The agreement states that "[n]o promises, agreements, or conditions have

13

been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all prior promises, agreements or conditions between the parties." (Plea Agreement ¶ 7.) In taking LoCurto's plea, I asked if there was "any other agreement that has been made to get you to plea guilty that's not contained in that plea agreement," and LoCurto answered "No, sir." (LoCurto Plea Hearing, at 15.) Accordingly, I reject Petitioner's contention that Bronson erroneously informed him that he would not be prosecuted for the Platia homicide.

I therefore conclude that Bronson, in his representation of LoCurto and Coppa in the same prosecution, had no conflict "with respect to a material factual or legal issue or to a course of action." Cuyler, 446 U.S. at 336 n.3. As there is no evidence that Bronson was involved with Coppa's activities as a cooperating witness, and there is no evidence showing a lapse of Bronson's representation of LoCurto, there is no basis to conclude that there was an actual conflict in Bronson's representation of LoCurto.[2]

    2.    Apparent Conflict

Having found that there was no actual conflict in Bronson's representation of LoCurto and Coppa from October through December 2002, I must now address the question of whether LoCurto waived any potential conflict posed by this dual representation. Upon learning that Bronson intended to represent LoCurto and Coppa in the same prosecution, I appointed Curcio counsel to advise LoCurto on any potential conflicts, and before taking LoCurto's plea I questioned him about the potential conflict. In the plea hearing, LoCurto expressly waived any

_____

[2] I also reject Petitioner's suggestion that the government's action of prosecuting Bronson in any way violated LoCurto's rights, because the prosecution of Bronson occurred well after LoCurto pled guilty, and thus could not have by itself impacted Bronson's representation of him.

potential conflict.  I am satisfied by the substance of the hearing that LoCurto understood the potential conflicts of Bronson representing himself and Coppa, and voluntarily waived them.  <u>See United States v. Blau</u>, 159 F.3d 68, 74 (2d Cir. 1998).  Furthermore, for the reasons provided above, I do not find that Bronson's representation of LoCurto resulted in any actual prejudice towards him.  As a result, I find that this court properly inquired regarding Bronson's potential conflict, and that LoCurto waived the potential conflict.

Accordingly, I find that Petitioner knowingly waived the potential conflict in Bronson's representation of himself and Coppa.

### 3.    Ineffective Assistance of Counsel

The petition also articulates an ineffective assistance of counsel claim, as it alleges that Bronson "did not tell me that this can be used (falsly [sic]) to bridge me to the crime in 1986," and that Bronson and Assistant United States Attorney Andres ("A.U.S.A. Andres") told him that if he pled guilty that "the goverment [sic] would leave me alone and not charge me with anymore [sic] crimes."  Petition ¶ 12(B)-(C).  The Sixth Amendment right to a fair trial includes the right to "adequate legal assistance," which protects defendants from defense counsel conduct that "so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  <u>Strickland v. Wash.</u>, 466 U.S. 668, 686 (1984).  For a court to find that defense counsel deprived a defendant of his or her Sixth Amendment right to effective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

To show that a guilty plea was a product of ineffective assistance of counsel, the defendant "'must first establish that counsel's representation fell below an objective standard of reasonableness.'" United States v. Couto, 311 F.3d 179, 197 (2d Cir. 2002) (citations omitted) (quoting United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam)). Second, "'the defendant must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting Hernandez, 242 F.3d at 112).

The government responds to Petitioner's ineffective assistance of counsel claim by noting that this court complied with Fed. R. Crim P. 11 ("Rule 11"). (Gov't Ltr. Br., dated July 2, 2005, at 13-15.) Rule 11 requires a district court to conduct a plea hearing before accepting the plea to determine whether the defendant understands his or her trial rights, and that the guilty plea is made knowingly and voluntarily. Fed. R. Crim. P. 11(b)(1). Upon a review of the LoCurto Plea Hearing, I am satisfied that the proceeding was in compliance with Rule 11, and that LoCurto appeared to understand his rights, his relinquishment of those rights through his guilty plea, and the terms of the plea agreement. (See LoCurto Plea Hearing.) However, a court's compliance with Rule 11 is not dispositive on the issue of a valid guilty plea, because it does not "conclusively show" that a petitioner cannot establish facts warranting relief. Fontaine v. United States, 411 U.S. 213, 215 (1973). This is especially true on the issue of ineffective assistance of counsel, where the alleged defects are unlikely to present themselves at the hearing because counsel is present. Couto, 311 F.3d at 187. Furthermore, LoCurto's waiver of his right to appeal the plea agreement is unenforceable insofar as "the defendant is challenging the constitutionality of the process by which he waived those rights." Hernandez, 242 F.3d at 112. Therefore,

16

considering LoCurto's ineffective assistance of counsel claim requires this court to examine the Petitioner's allegations to determine whether the plea agreement was the product of representation that fell below an "objective standard of reasonableness." Id.

Petitioner has failed to establish that his guilty plea was the result of ineffective assistance of counsel. The plea agreement is not objectively unreasonable. The plea agreement provides that LoCurto agrees to admit to a lesser charge of marijuana distribution in return for the government's voluntary dismissal of the greater charges. (See Plea Agreement ¶¶ 1-5.) Petitioner does not allege his innocence of the charge or that the government did not have sufficient evidence to convict him. Petitioner also does not allege that his counsel misled him about the probable result of going to trial. Under the circumstances, I find the plea agreement to have been reasonable, and it is not susceptible to a challenge of being the product of an ineffective defense lawyer. (Oppenheim Ltr., dated July 20, 2005, at 3.)

The petitioner has failed to provide this court with any specific instance of misrepresentation other than his conclusory statements that Bronson failed to inform him that he could be prosecuted for racketeering in the future, and that he and A.U.S.A. Andres told him that if he pled guilty that he would not be charged with any other crimes. The former allegation cannot stand, because ultimately erroneous legal advice about the possible collateral impact of a guilty plea cannot form the basis of an ineffective assistance of counsel claim. See United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) ("We have held that an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness." (citations omitted)); United States v. Sweeny, 878 F.2d 68, 70 (2d Cir. 1989) (finding that erroneous advice about the likely sentence defendant would

17

obtain from a plea agreement is not objectively unreasonable).

Furthermore, the evidence shows that whether or not he spoke with Bronson about the possibility of a future prosecution involving marijuana distribution, LoCurto was aware of such a possibility. LoCurto at the plea hearing expressly acknowledged that he read the plea agreement and understood it, and that he agreed that he was not permitted to withdraw or appeal the plea. (LoCurto Plea Hearing, at 20-21.) As will be discussed *infra*, LoCurto initialed paragraph five of the plea agreement in which the prosecution reserved the right to prosecute LoCurto for racketeering with the marijuana distribution conviction as a predicate act, which demonstrates that LoCurto understood and agreed to the provision. (Plea Agreement ¶ 5(a).) As a result, I find that Petitioner's assertion that Bronson did not inform him of the possibility of a future racketeering prosecution fails to show ineffective assistance of counsel because it does not meet the standards of unreasonable representation under <u>Strickland</u> and the evidence shows that LoCurto understood and agreed to this aspect of the plea agreement.

Petitioner's latter contention, that Bronson affirmatively misled LoCurto into believing that he would not be subject to future prosecution, is contrary to the evidence insofar as it alleges that promises had been made outside of the plea agreement regarding future prosecutions. The petition offers no evidence in support of this contention, and the allegation is contradicted by the plea hearing and plea agreement, in which LoCurto knowingly and voluntarily waived his right to appeal his conviction, disclaimed the existence of any agreement outside of the plea agreement, and expressly acknowledging the government's right to subsequently prosecute him for racketeering with marijuana distribution as a predicate act. As a result, I reject this claim as contrary to the plea agreement and LoCurto's sworn testimony in the plea hearing. <u>See</u>

Hernandez, 242 F.3d at 112 (rejecting motion to withdraw plea because defendant's assertion that he was misled by counsel about the consequences of the plea was unsupported by evidence and contrary to "defendant's sworn statements . . . that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw" or appeal the plea, and "had been made no promises except those contained in the plea agreement").

Upon review, I find that Petitioner has raised no substantial questions about the knowing and voluntary nature of his guilty plea or of his counsel's performance. His ineffective assistance of counsel claim is therefore denied.

**B.    Petitioner's Other Claims**

Next, LoCurto contends that apart from his Sixth Amendment claim, his plea agreement is nonetheless invalid because he did not understand the nature of the plea, in that he was unaware when he pled that he would be prosecuted on racketeering charges using the marijuana distribution as a predicate act, and because the plea was coerced in that he pled guilty under the pretense that he would not be subsequently prosecuted. (Petition ¶ 12(B)-(C).) To the extent that this claim does not raise a Sixth Amendment issue that I have addressed above, LoCurto's contentions are untimely, procedurally barred, and meritless.

1.    Petitioner's Claim Is Untimely

LoCurto's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides for a one-year limitations period effective from the latest of: "(1) the date on which the judgment becomes final . . . . [or] (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255. It is uncontested that the Court entered a Judgment of Conviction against

LoCurto on April 30, 2003, and that LoCurto never filed an appeal.  The Federal Rules of Appellate Procedure provide that a judgment of conviction becomes final ten days after judgment is entered, excluding weekends.  See Fed. R. App. Pro. 4(b)(1)(A); 26(a)(2).  Even assuming, arguendo, that LoCurto could not have discovered these claims until he was indicted in Urso, the most recent superseding indictment was in January 2004, over one year before Petitioner filed this petition in March 2005.  Therefore, Petitioner's claims distinct from his Sixth Amendment claim are barred as untimely.

 2. Waiver of Appeal Rights in Plea Agreement

LoCurto claims that his plea agreement, and thus his waiver of his right to appeal, was not made "knowingly and voluntarily" because he was unaware that he could be prosecuted in the future for charges that the marijuana distribution conviction was in the furtherance of the Bonanno organized crime family.  The government asserts that this claim is foreclosed by the plea agreement, in which LoCurto expressly waived his right to appeal the conviction and acknowledged that the conduct could be used as a predicate act at a subsequent racketeering prosecution.  (Gov't Ltr. Br., dated July 2, 2005, at 14-15.)  I therefore must answer whether LoCurto waived his appeal rights knowingly and voluntarily such that the plea agreement has a preclusive effect on this claim.  I answer this question in the affirmative.

I understand LoCurto's claim to be that his plea was not "knowingly" made because he did not "know" that he could be prosecuted for a racketeering conspiracy with the marijuana distribution conviction supporting a predicate act, and thus did not "know" the full ramifications of his plea as he was entitled to when he surrendered his right to jury trial and appeal.  The only relevant question for this court, however, is whether LoCurto understood the admission he was

making, the rights he was forgoing, and the combined consequences of those decisions at the time he entered his plea. LoCurto signed the plea agreement in which he surrendered these rights, and clearly expressed at his plea hearing that he understood the choice that he was making in accepting the government's plea agreement. Further, the plea agreement itself expressly acknowledges that the government could subsequently prosecute him for racketeering with the instant offense as a predicate act:

> no further criminal charges will be brought against the defendant for marijuana trafficking on or about and between January 1991 and January 2000 [modified to "2001"], it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq. . . .

(Plea Agreement ¶ 5(a).) This agreement expressly contemplates and permits the possibility that the marijuana distribution would be used as a predicate act in a future racketeering conspiracy prosecution. Furthermore, the plea agreement itself demonstrates that LoCurto read this paragraph. In the plea agreement signed by Steven LoCurto, the relevant paragraph has been manually changed - "2000" is changed to "2001." Next to this change are three initials: "GDA" for the Assistant United States Attorney Greg D. Andres, "LB" for Larry Bronson, and "SL" for Steven LoCurto. LoCurto's claim that he was unaware that he might be later subject to a racketeering prosecution with the underlying marijuana distribution charge as a predicate offense is belied by LoCurto's having initialed the precise paragraph that acknowledges this possibility. Therefore, LoCurto knowingly entered his guilty plea, which expressly reserved the right by the government to utilize the underlying marijuana distribution charge as a predicate act in a subsequent racketeering prosecution.

Having resolved that LoCurto's guilty plea was knowingly and voluntarily made, it is apparent that LoCurto's waiver of his right to appeal his conviction must be enforced. See United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995); United States v. Salcido-Contreras, 990 F.2d 51, 51 (2d Cir. 1993) (citing United States v. Rivera, 971 F.2d 876, 896 (2d Cir. 1992)). A knowing and voluntary waiver of a right to appeal constitutes a waiver to relief under 28 U.S.C. § 2255. Defex v. United States, No. 97 Civ. 1891, 1998 WL 812572, at *1-2 (E.D.N.Y. May 19, 1998) ("Having expressly waived appellate review, he cannot now obtain under 28 U.S.C. § 2255 collateral review" on the ground that the sentence was improperly calculated). This is doubly so in this case because LoCurto explicitly waived not only his right to appeal, but also any right to "otherwise challenge the conviction or sentence." This clause covers habeas petitions brought under § 2255 such as this one, and LoCurto does not argue otherwise. Having thus waived his right to collaterally attack his conviction under § 2255 in the Plea Agreement, LoCurto may not now seek relief via this avenue.

    3.    Procedurally Barred

Even if this claim were not barred by the waiver provision contained in his plea agreement, it would have to be dismissed because LoCurto did not raise this claim, or any other, on direct appeal. A litigant seeking to challenge his sentence or conviction pursuant to § 2255 is barred from litigating any issue that was not raised on direct review unless he can show that there was cause for failing to raise the issue, and prejudice resulting therefrom. United States v. Pipitone, 67 F.3d 34, 39 (2d Cir. 1995). LoCurto did not file a direct appeal, and his time to do so has now expired. Therefore, he is procedurally barred from raising any claim at this juncture unless he can vault both the cause and prejudice hurdles of the governing standard.

LoCurto has not presented any justification for his failure to raise his claim on direct appeal, and thus stumbles at the first barrier. The most likely reason that he did not do so is that he explicitly waived his right to appeal, as discussed above. Such a waiver cannot constitute cause excusing a petitioner's failure to raise a claim on direct appeal. Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001). LoCurto's claim that he did not understand the consequences of his plea is therefore procedurally barred even if he retains the right to collateral review of his Sixth Amendment claim that survived the explicit waiver of that right in his plea agreement.

## III. Conclusion

For the reasons set forth above, LoCurto's petition for a writ of habeas corpus is denied. Petitioner's Sixth Amendment claim has failed to show an actual or potential conflict that he did not waive, or ineffective assistance of counsel. Because LoCurto waived his right to bring a petition of this kind, and did not directly appeal the conviction, he is procedurally barred under AEDPA from instituting his claims distinct from the Sixth Amendment claim, and in any event his claims alleging coercion and lack of understanding of the plea agreement are untimely and lack merit. A certificate of appealability shall not issue. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: March __, 2006              _____/s/_____
     Brooklyn, N.Y.              Nicholas G. Garaufis
                                 United States District Judge